UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| DOLLAR LOAN CENTER OF SOUTH DAKOTA, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>BRET AFDAHL,[1]<br><br>Defendant. | 3:17-CV-03024-RAL<br><br><br>OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO RECONSIDER |

Plaintiff Dollar Loan Center of South Dakota, LLC (DLC) brought this suit under 42 U.S.C. § 1983 against Defendant Bret Afdahl (Afdahl), the director of the South Dakota Division of Banking (the Division), alleging Afdahl deprived DLC of procedural due process required under the Fourteenth Amendment when he revoked DLC's money lending licenses. Doc. 1. Afdahl moved to dismiss the action for failure to state a claim, Doc. 8, DLC moved for partial summary judgment, Doc. 11, and Afdahl filed a cross motion for summary judgment, Doc. 19. This Court issued an opinion and order granting DLC's motion for partial summary judgment in part and denying Afdahl's motion to dismiss and cross motion for summary judgment on May 29, 2018. Doc. 37. DLC subsequently filed a motion to reconsider the portion of this Court's May 29 opinion and order discussing the deprivation of DLC's protected property interest as lasting for a 15-day

---

[1] DLC initially filed this action against "Brett Afdahl, individually and in his official capacity as director of the South Dakota Division of Banking." Doc. 1. DLC seeks only monetary damages against Afdahl and concedes that the only cognizable claim against Afdahl is in his individual capacity. The correct spelling of Afdahl's first name is Bret.

1

period (or "at least for 15 days"[2] as the Court twice put it) between the issuance of Afdahl's Cease and Desist and License Revocation Order (Order) on September 13, 2017, and the limited stay of that Order, issued on September 28, 2017, and subsequent notice of hearing given on October 3, 2017. Doc. 41. Afdahl then filed an interlocutory appeal of this Court's decision to the Eighth Circuit on the issues of absolute and qualified immunity, Doc. 44, and DLC filed a cross appeal on the same questions presented in its motion to reconsider, Doc. 48. The Eighth Circuit is currently holding the appeal and cross appeal briefing schedule in abeyance until this Court addresses DLC's motion to reconsider. For the reasons stated below, this Court denies DLC's motion to reconsider.

I. **Facts Relevant to this Motion**

This Court's May 29, 2018 opinion and order details the full factual background that gave rise to DLC's § 1983 claim. The facts presented here are those relevant to DLC's current motion to reconsider only.

The Division conducted a target examination and a full scope examination of DLC in the summer of 2017, and Afdahl subsequently issued his Order on September 13, 2017. Doc. 10-1 at 7–12. The Order instructed DLC to "cease engaging in the business of money lending in South Dakota" and to notify all consumers who were issued loans after June 21, 2017, that the loans were void and uncollectible as to "any principal, fee, interest, or charge pursuant to SDCL 54-4-44."

---

[2] This Court referred to the deprivation of DLC's protected property interest in licenses as lasting "for at least 15 days" twice in the May 29 opinion and order. Doc. 37 at 23, 36. On the second occasion, this Court wrote "DLC was deprived of a constitutional right at least for 15 days when its lending licenses were revoked." Doc 37 at 36. Later, this Court referred to the 15 day period— from September 13 to September 28, 2017—and ultimately granted summary judgment to DLC with respect to that 15 day period. Doc. 37 at 39–41. The motion to reconsider provides a welcome opportunity for this Court to clarify that the deprivation lasted at least 15 days, but that summary judgment for DLC entered only for the 15 day period. Whether there was a deprivation beyond the 15 day period is a fact question on which this Court has made no finding at this time.

2

Doc. 10-1 at 11. The Order further required DLC to surrender all of its South Dakota money lender licenses and return them to the Division. Doc. 10-1 at 11. The Order contained a "Findings of Fact" section, a "Conclusions of Law" section, and a notice that "any person aggrieved by this order" could within 30 days file a request for a hearing before the South Dakota Banking Commission. Doc. 10-1 at 8–12. The Division emailed representatives of DLC on September 15, 2017, emphasizing that DLC was no longer a licensed money lender in South Dakota, and again on September 18, 2017, requesting confirmation that DLC was complying with the Order. Doc. 1-7; Doc. 1-8.

DLC served this current lawsuit on Afdahl on September 25, 2017. Doc. 5. Perhaps then realizing that he had been too hasty in his Order, Afdahl issued a limited stay of the Order on September 28, 2017, which provided that DLC could continue servicing all loans originated prior to November 16, 2016. Doc 10-1 at 14–15. DLC was also to provide certain information to the Division about the unpaid loans originated prior to November 16, 2016, basic identifying information about the loans and borrowers, and monthly reports to the Division showing all loan payments received during the preceding month. Doc. 10-1 at 14–15.

On October 3, 2017, the Division served DLC with a notice of hearing to be held on October 17, 2017, in front of the Office of Hearing Examiners (OHE). Doc. 10-1 at 1–5. The Notice advised that the purpose of the hearing was "to determine whether Dollar Loan Center has violated the provisions of SDCL Chapter 54-4, and whether or not its money lending license[s] should be revoked and the terms and conditions as contained in the [Order] should be enforced." Doc. 10-1 at 1. Afdahl had statutory authority to issue a cease and desist order and this Court determined that the combined effect of the limited stay on September 28 and the October 3 notice of hearing was to transform the original Order into a cease and desist order. Doc. 37 at 36.

Rather than availing itself of the hearing to challenge the propriety of Afdahl's actions, DLC on October 5, 2017, requested to continue the hearing, though no specific date was proposed. Doc. 10-6 at 2. Around the same time, DLC's Chief Operations Officer, Edward Anderson, authored a letter to the Division, advising that DLC was returning its lending licenses to the Division in accordance with Afdahl's Order. Doc. 43-1.[3] The Division received this letter and the licenses for DLC's main Sioux Falls location and Rapid City location on October 6, 2017. Doc. 52-1 at ¶¶ 22–23. DLC also had valid licenses for locations in Aberdeen, Watertown, and a satellite Sioux Falls branch, but had not reopened those locations at the time DLC returned its main Sioux Falls and Rapid City location licenses to the Division. Doc. 43 at ¶ 6. DLC did not return to the Division the valid licenses for the three non-operational branches. Doc. 43 at ¶ 6. The Division has retained possession of the licenses for DLC's main Sioux Falls location and Rapid City location since October 6, 2017. Doc. 52-1 at ¶ 25. All money lending licenses issued to DLC expired on December 31, 2017, and DLC has not filed any renewal applications. Doc. 52-1 at ¶ 30.

On October 12, 2017, DLC filed an appeal of Afdahl's Order in the South Dakota Sixth Judicial Circuit Court, arguing that it constituted a final agency action. Doc. 10-2. That appeal was dismissed by the Sixth Judicial Circuit Court, Doc. 52-1 at ¶ 31, and DLC then appealed to the Supreme Court of South Dakota, which has not yet issued a ruling on that appeal, Doc. 52-1 at ¶ 32.

In its May 29, 2018 opinion and order, this Court determined that Afdahl violated DLC's constitutionally guaranteed right to procedural due process when he revoked, through his Order,

---

[3] DLC in filing the motion to reconsider with this Court provided this additional information and the information contained in the rest of this paragraph.

DLC's money lending licenses without providing DLC with a predeprivation hearing. Doc. 37 at 22–37. This Court granted summary judgment to DLC for the 15-day period between the issuance of Afdahl's Order on September 13, 2017, and the issuance of the stay of that Order on September 28, 2017. As explained in footnote 2 above, this Court elsewhere characterized the deprivation as being "for at least 15 days" leaving for trial whether the deprivation was only 15 days or perhaps 20 days (through to the notice of hearing).[4] In doing so, this Court noted that "[w]hen Afdahl stayed his Order on September 28, 2017, and subsequently on October 3, 2017, gave notice of a hearing, he essentially transformed the Order into a cease and desist order, and [not knowing at the time what DLC subsequently has placed in the record] it appears that DLC remains in possession of its licenses at this time."[5] Doc. 37 at 36.

## II. Analysis

### A. Standard for a Motion to Reconsider

DLC moves this Court to reconsider the determination it made regarding the duration of the deprivation of DLC's protected property interest. Doc. 41. Rule 54(b) of the Federal Rules of Civil Procedure instructs that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); see also Julianello v. K-V Pharm. Co., 791 F.3d 915, 923 n.3 (8th Cir. 2015) (noting that

---

[4] Although on this record, it is hard to conceive how the deprivation could somehow be longer than 20 days, this Court stops short of making a conclusive ruling in that regard.
[5] The record at the time of the May 29, 2018 opinion and order did not contain DLC's October 3 letter, Doc. 43-1, surrendering two licenses or information that DLC did not seek to renew any licenses when they expired on December 31, 2017.

5

Rule 54(b), rather than Rule 60(b), is the appropriate rule under which to consider a reconsideration motion when final judgment has not yet entered on any of plaintiff's claims).

A district court's decision to reconsider a motion for summary judgment is reviewed under the abuse of discretion standard because "[t]he district court has the inherent power to reconsider and modify an interlocutory order any time prior to the entry of judgment." K.C. 1986 Ltd. P'ship v. Reade Mfg., 472 F.3d 1009, 1017 (8th Cir. 2007) (quoting Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co., 48 F.3d 1066, 1070 (8th Cir. 1995)). Courts generally should not reopen issues decided in prior stages of the same litigation unless the court is "convinced that [its prior decision] is clearly erroneous and would work a manifest injustice." Agostini v. Felton, 521 U.S. 203, 236 (1997) (alteration in original) (quoting Arizona v. California, 460 U.S. 605, 618 n.8 (1983)).

**B. Claimed Errors of Fact**

DLC argues that this Court made "an erroneous finding of fact" that DLC had not surrendered its money lending licenses and was not required to do so after Afdahl stayed his Order. Doc. 42 at 12. To be clear, in ruling on a motion to dismiss and cross motions for summary judgment, this Court was not engaged in making any findings of fact per se. In the 41 page opinion and order, this Court—based on there being no pleadings submitted in connection with the motion papers about DLC's licenses being seized or surrendered—stated "it appears that DLC remains in possession of its licenses at this time," Doc. 37 at 36, and "[i]t appears that DLC did not surrender its licenses and was not required to do so once Afdahl issued the Stay," Doc. 37 at 23 n.12. It turns out that this assumption was at least partially incorrect.

In support of its motion to reconsider, DLC filed an affidavit from DLC regional manager Beau Fitts (Fitts), advising that DLC had returned to the Division the lending licenses for DLC's main Sioux Falls location and Rapid City location on October 4, 2017. Doc. 43 at ¶ 3. Afdahl

submitted an affidavit in opposition to DLC's motion to reconsider, confirming that the Division received those licenses on October 6, 2017. Doc. 52-1 at 22–23. DLC has acknowledged that it did not return the licenses for its three branch locations in Sioux Falls, Aberdeen, and Watertown because "it did not occur to" Fitts that those licenses needed to be returned as those branches had been closed after the passage of Initiated Measure 21 (IM 21) and "the licenses were not in use." Doc. 43 at ¶ 6.

The fact that DLC returned its main two lending licenses (though not its other three licenses) to the Division after Afdahl issued the stay of his Order does not lead this Court to reconsider its earlier determinations that DLC was deprived of its property interest for at least 15 days or that the effect of the September 28 stay and October 3 notice of hearing was similar to a cease and desist order. Neither the September 28 stay nor the October 3 notice of hearing demanded surrender of the licenses, and the notice of hearing set an October 17 hearing in part on "whether or not [DLC's] money lending licenses should be revoked." Doc. 10-1 at 1. It is a question for trial whether DLC made a strategic decision in seeking to forgo a hearing and instead to surrender its two main licenses to avert the Division's effort to provide procedural due process, albeit late, and instead maximize potential damages to seek through this suit.

Regardless, the protected property interest at issue in this case is DLC's ability to conduct business in South Dakota, which is merely represented by the licenses it was issued by the Division. See, e.g., Ramsey v. Bd. of Educ. of Whitley Cty., 844 F.2d 1268, 1273 (6th Cir. 1988) ("The Supreme Court has held repeatedly that the property interest in a person's means of livelihood is one of the most significant that an individual can possess."); Holt Bonding Co., Inc. v. Nichols, 988 F. Supp. 1232, 1241 (W.D. Ark. 1997) (noting that a business license for a bail bond company "may be essential in the pursuit of a person's livelihood" and thus should not be

suspended without a predeprivation hearing). In this case, Afdahl's Order mandated that DLC "cease engaging in the business of money lending in South Dakota" and surrender all of its money lending licenses to the Division. Doc. 10-1 at 11. The deprivation of DLC's protected property interest was complete with the issuance of the Order on September 13, 2017, because the Order deprived DLC of the ability to engage in money lending in South Dakota. That DLC retained physical possession of all of its money lending licenses until it returned two of its five valid lending licenses to the Division on October 4, 2017, did not affect the deprivation DLC suffered on September 13, 2017. That is, the deprivation began on September 13 and not on October 6 when the Division received the two main licenses from DLC. DLC's action of mailing to the Division its two main licenses did not trigger or necessarily prolong the deprivation. This Court's reference to DLC holding onto its licenses (which was true as to three of the five licenses) was not central to this Court's decision and does not merit reconsideration of the May 29 opinion and order.

DLC also requests this Court to reconsider that DLC "was not required to [surrender its licenses]" after Afdahl issued the stay of his Order. Doc. 37 at 23 n.12. In support of this request, DLC argues that the stay of Afdahl's Order "did not mention, and therefore did not alter, the portion of the Revocation Order requiring DLC to surrender its money lending licenses." Doc. 42 at 11. While DLC is correct in noting that the stay issued on September 28, 2017, did not specifically state that DLC was no longer required to surrender its money lending licenses, it did specify that DLC could continue servicing loans originated before November 16, 2016. Doc. 10-1 at 14–15. Five days later on October 3, 2017, the Division served DLC with a notice of hearing which stated that "[t]he purpose of this hearing is to determine whether [DLC] has violated the provisions of SDCL Chapter 54-4, *and whether or not its money lending license[s] should be revoked* and the terms and conditions as contained in the Cease and Desist and License Revocation

Order (Order No. 2017-2) should be enforced." Doc. 10-1 at 1 (emphasis added). Moreover, DLC did not surrender, and the Division did not seek possession of, the licenses for the Aberdeen, Watertown, and Sioux Falls branch locations. Doc. 43 at ¶ 6; Doc. 52-1 at ¶ 24. Rather, DLC held those licenses until they expired on December 31, 2017, with DLC not seeking to renew them.

When viewed in context, DLC was not required to surrender its money lending licenses to the Division after Afdahl issued the stay of his Order and gave notice of hearing. South Dakota law specifies that "[n]o person may engage in the business of lending money without a license." SDCL § 54-4-52. The stay of Afdahl's Order—allowing DLC to continue servicing its loans originated prior to November 16, 2016—is some evidence that the stay may have reinstated DLC's status as a licensed money lender, albeit with significant restrictions. Moreover, the language of the notice of hearing clearly states that the Division was seeking a hearing with the OHE in order to determine whether DLC's money lending licenses should be revoked and the terms of the Order enforced. The Division may not have returned the licenses which DLC surrendered in October 2017, but it also did not seek to obtain the remaining licenses in DLC's possession. Therefore, the factual errors claimed—really a single mistaken assumption that DLC retained all five licenses when in fact it chose to surrender two after the stay and notice of hearing—do not merit reconsideration of the May 29 opinion and order.

### C. Claimed Errors of Law

DLC argues this Court's determination that the stay of Afdahl's Order and subsequent notice of hearing effectively transformed the license revocation into a cease and desist order constitutes an error of law. The thrust of DLC's argument is that the stay of the Order was too narrow to materially affect the revocation of DLC's money lending licenses, and thus "the Revocation Order remained in full effect after the Limited Stay." Doc. 42 at 10. This Court was

aware of the limitations imposed on DLC by the Order and subsequent stay at the time it issued its May 29, 2018 opinion and order, see Doc. 37 at 11–12, 23, 36, 39–41, and DLC's current arguments do not warrant a reconsideration of that decision.

Specifically, DLC argues that the revocation of its licenses did not end with the stay and subsequent notice of hearing because the stay of Afdahl's Order only allowed DLC to service loans originated prior to November 16, 2016, and did not allow DLC to "use[] any number of other Division-approved loan products to continue to do business." Doc. 42 at 9. As an example, DLC notes that a competitor offers short-term loans not far from DLC's former location. Doc. 42 at 9–10. But DLC's argument is problematic for two reasons. First, Afdahl—as the director of the Division—had authority under state law to issue a cease and desist order to halt DLC's signature loan product without a hearing. See SDCL § 54-4-48. Had Afdahl issued a cease and desist order in lieu of his Order revoking DLC's licenses, DLC would have been left with only its long-term loans originated prior to November 16, 2016, when IM 21 became law. This was the reality DLC faced once Afdahl issued the stay of his Order and notice of hearing. Second, DLC's argument about short-term loans to illustrate other Division-approved loan products ignores the fact that DLC could not make short-term loans. None of DLC's lending license applications disclosed that DLC would issue short-term loans. See Docs. 22-2, 22-3, 22-4, 22-5, 22-6, 22-7, 22-8, 22-9. Indeed, one of the bases cited by Afdahl for revoking DLC's licenses was the fact that DLC was not licensed to issue short-term loans.[6] Even if DLC is taking issue with Afdahl's conclusion that it was not licensed to issue short-term loans, there is no question that the license applications filed by DLC with the Division affirmatively stated that DLC would not issue short-term loans. Under

---

[6] Moreover, there is nothing in the record regarding the practices of DLC's competitor for this Court to evaluate other than DLC's reference to a competitor offering short term loans in its brief in support of a motion to reconsider.

South Dakota law, the filing of a money lending license application that contains false or misleading statements constitutes good cause to revoke a money lending license.[7] See SDCL § 54-4-49(7).

DLC's other arguments about claimed errors of law largely assert that this Court should have ruled differently. None of the claimed errors of law prompt this Court to reconsider its ruling.

### III. Conclusion

For the reasons stated above, it is hereby

ORDERED that DLC's motion to reconsider, Doc. 41, is denied, although this Court clarifies its May 29, 2018 opinion and order as set forth in footnote 2 and with regard to the fact that DLC sent in its two main lending licenses to the Division which were received on October 6 but retained the three lending licenses for branches previously closed in the wake of IM 21.

DATED this 10th day of August, 2018.

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE

---

[7] In addition, the Division and Afdahl had concluded that DLC had violated SDCL § 54-4-44.1 by employing the late fees of its signature loan product as an end-run around the usury percentage rate cap established by IM 21. South Dakota's statute defining good cause warranting the revocation of a money lending license also includes the "[v]iolation of any statute, rule, order, or written condition of the [Banking] commission or any federal statue, rule, or regulation pertaining to consumer credit." SDCL § 54-4-49(1).